# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC<br><br>Plaintiff,<br><br>v.<br><br>SEIKO EPSON CORPORATION and<br>EPSON PRECISION PHILIPPINES, INC.,<br><br>Defendants. | Civil Action No. 4:21-cv-00718-ALM<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE <u>CENTRAL DISTRICT OF CALIFORNIA</u>**

# CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF ISSUES ................................................................................. 3

III.   BACKGROUND ................................................................................................ 3

IV.   AP FAILS TO ADEQUATELY STATE A CLAIM FOR INFRINGEMENT AGAINST SEIKO JAPAN AND EPSON PHILIPPINES, AND ITS COMPLAINT SHOULD BE DISMISSED........................................................... 4

    A.    Legal Standard .......................................................................................... 5

    B.    AP Failed to Sufficiently Plead Direct Infringement as to the Patents-in-Suit ............................................................................................................. 5

    C.    AP Failed to Sufficiently Plead Induced Infringement of the Mody Patents ........ 8

        1.    AP's Allegations Against Seiko Japan and Epson Philippines are the Same Allegations—Verbatim—that AP has Made Against Several Other Defendants .......................................................... 8

        2.    AP Has Not Alleged Facts Supporting a Plausible Claim that Seiko Japan or Epson Philippines Knew of the Mody Patents or Possessed the Requisite Specific Intent ..................................... 9

        3.    AP's Allegations of "Willful Blindness" are Equally Insufficient. ......... 10

    D.    AP Failed to Sufficiently Plead Contributory Infringement of the Mody Patents ...................................................................................................... 11

    E.    AP Failed to Sufficiently Plead Willful Infringement of the Mody Patents........ 11

    F.    Conclusion ............................................................................................... 12

V.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA ................................................. 12

    A.    Legal Standard ........................................................................................ 13

    B.    This Action Could Have Been Brought in the Central District of California...... 13

    C.    The Private Interest Factors Favor Transfer to California ................................. 14

        1.    Access to Evidence is Easier in the Central District of California .......... 14

        2.    The Availability of Compulsory Process is Neutral ............................... 16

        3.    The Cost of Attendance for Willing Witnesses is Substantially Less in California ............................................................................... 16

        4.    Judicial Economy Favors Transfer ....................................................... 18

    D.    The Public Interest Factors Favor Transfer to California or Are Neutral............ 19

        1.    The Substantial Local Interest of the Central District of California Favors Transfer .......................................................................... 19

## TABLE OF CONTENTS
(continued)

Page

2. Transfer Poses No Greater Administrative Difficulties Flowing From Court Congestion..................................................................... 20

3. Both This Forum and the Central District of California Are Familiar With Patent Law ....................................................................... 20

4. Transfer Would Not Pose Any Unnecessary Problems of Conflicts of Laws or in the Application of Foreign Law ....................................... 20

VI. CONCLUSION.......................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Adaptix Inc. v. HTC Corp.*,
    937 F.Supp.2d 867 (E.D. Tex. 2013) ......................................................................14, 18, 20

*American Patents LLC v. Newell Brands Inc.*,
    No. 6:21-cv-636-ADA (W.D. Tex. Jun. 21, 2021), D.I. 1 ......................................................9

*American Patents LLC v. Polycom, Inc.*,
    No. 6:21-cv-742-ADA (W.D. Tex. Jul. 20, 2021), D.I. 1 ......................................................8

*American Patents LLC v. Xerox Corp.*,
    No. 6:21-cv-638-ADA (W.D. Tex. Jun. 21, 2021), D.I. 1 ......................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................3, 5, 11

*Babbage Holdings, LLC v. Activision Blizzard, Inc.*,
    Civ. No. 2:13-750-JRG, 2014 WL 2115616 (E.D. Tex. May 15, 2014) ..........................10, 11

*Bell Atlantic, Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................3

*Cantu v. Moody*,
    933 F.3d 414 (5th Cir. 2019) ....................................................................................................5

*Celgene Corp. v. Mylan Pharms. Inc.*,
    17 F.4th 1111 (Fed. Cir. 2021) .........................................................................................5, 6, 8, 12

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015) ................................................................................................................11

*DSU Med. Corp v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ......................................................................................8, 9, 10

*GeoTag, Inc. v. Starbucks Corp.*,
    Civ. No. 2:10-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ............................................19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016) ......................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Apple Inc.*,
  969 F.3d 1332 (Fed. Cir. 2020)..........................................................................20

*In re Atlassian Corp. PLC*,
  No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 2021) .......................................15

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009).....................................................................16, 20

*In re: Juniper Networks*,
  14 F.4th 1313 (Fed. Cir. 2021) .........................................................................19

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009).....................................................................14, 21

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .......................................................................15, 20

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)..........................................................................19

*In re Volkswagen of America Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................................13

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (5th Cir. 2007) .....................................................................5, 9, 10

*Nonend Inventions, N.V. v. Apple, Inc.*,
  Civ. No. 2:15-466-JRG-RSP, 2016 WL 1253740 (E.D. Tex. 2016) .......................10

*Promote Innovation LLC v. Bristol-Myers Squibb Co.*,
  Case No. 2:10-cv-120, 2011 WL 1399393 (E.D. Tex. Apr. 13, 2011)....................20

*Swirlate IP LLC v. Keep Truckin, Inc.*,
  No. 20-1283-CFC, 2021 WL 3187571 (D. Del. July 28, 2021) ..............................7

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)........................................................................................18

*Varian Medical Systems, Inc. v. Elekta AB*,
  C.A. No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ........................12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009).............................................................................8, 9

**STATUTES**

28 U.S.C. § 1391(c)(3)....................................................................................14

28 U.S.C. § 1404(a) ...........................................................................3, 4, 13, 18

**OTHER AUTHORITIES**

Rule 12(b)(6)........................................................................................... passim

## I.      INTRODUCTION

In an attempt to forum shop, the Complaint of plaintiff American Patents LLC ("AP") names only two foreign defendants—Seiko Epson Corporation ("Seiko Japan") and Epson Precision Philippines, Inc. ("Epson Philippines")—that have no presence in the United States. At the same time, the Complaint conspicuously omits naming Epson America, Inc. ("Epson America") as a defendant—the Epson entity based in California that actually imports, markets, sells, and distributes Epson products in the United States, including the products accused of infringement by AP.  The end result of AP's venue-motivated pleading is that its Complaint runs afoul of the *Iqbal/Twombly* pleading standard by failing to state a plausible claim of infringement against either Seiko Japan or Epson Philippines.  Defendants therefore move to dismiss the Complaint or, in the alternative, to transfer the case to California given Epson America's headquarters and presence there.

Recognizing the lack of factual support for its allegations against either foreign defendant, AP simply lumps Seiko Japan and Epson Philippines together as "Epson" and then lodges generic, boilerplate allegations.  AP has not alleged any specific facts or conduct by Seiko Japan or Epson Philippines individually that can support a plausible claim of direct infringement against either defendant.  AP's generic direct infringement allegations fail to state a claim under *Iqbal/Twombly*, particularly where the Complaint itself pleads that Seiko Japan and Epson Philippines are foreign defendants, but it does not plead any facts (much less plausible ones) that they have acted in the United States to commit direct infringement.  Indeed, it is undisputed that Seiko Japan and Epson Philippines do not have any U.S. presence, as explained by the declarations from Seiko Japan and Epson America submitted here in support of Defendants' alternative motion to transfer.

1

AP's claims for indirect infringement fare no better.  AP again simply regurgitates the same conclusory "allegations" it has made against other defendants in this jurisdiction, and again lumps together Seiko Japan and Epson Philippines as "Epson".  These allegations, which merely recite the elements of a claim for inducement or contributory infringement, are insufficient to state a plausible claim for indirect infringement against Seiko Japan or Epson Philippines.  AP fails to allege the specific actions by Seiko Japan or Epson Philippines that allegedly induce or contribute to infringement, or any facts that support Seiko Japan or Epson Philippines's alleged knowledge of the patents-in-suit or possession of the requisite intent to infringe.

To the extent there might be any plausible claim of patent infringement here, the party against whom AP should litigate is Epson America.  Tellingly, the Complaint specifically invokes Epson America and cites repeatedly to Epson America's website.  So there is no doubt AP is aware of Epson America and its role as the importer, seller, marketer, and distributor of the accused products.  But by not accusing Epson America of infringement, the end result is that AP's Complaint fails to state a plausible claim against Seiko Japan and Epson Philippines, and AP cannot circumvent this requirement by conflating these distinct entities as "Epson".

Because Epson America has no physical presence in the state of Texas (let alone this forum), venue is not proper in this jurisdiction over Epson America.  This is, of course, why AP did not name Epson America as a defendant in this action.  To the extent AP seeks to assert patent infringement claims against the products identified in the Complaint, such claims should be brought against Epson America, not Seiko Japan or Epson Philippines.  For that reason, Epson America is concurrently filing a declaratory judgment action against AP in the Central District of California on the same patents and products at issue in this case, and to the extent the Court does

not dismiss this case pursuant to Rule 12(b)(6), it should transfer it there so it can proceed against the proper party, Epson America.

## II.     STATEMENT OF ISSUES

1.      Whether AP has sufficiently pled a plausible cause of action against Seiko Japan and Epson Philippines, including whether AP's Complaint pleads specific facts to satisfy the pleading requirements articulated in *Iqbal*, *Twombly*, and their progeny.

2.      Whether, in the alternative, this case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a).

## III.    BACKGROUND

AP filed suit against Seiko Japan and Epson Philippines on September 15, 2021, alleging infringement of four U.S. Patents: U.S. Patent Nos. 6,847,803 ("'803 patent"); 7,088,782 ("'782 patent"); 7,310,304 ("'304 patent"); and 7,706,458 ("'458") patent.  The four asserted patents are collectively referred to herein as "the patents-in-suit," and the '782, '304, and '458 patents are collectively referred to herein as the "Mody patents".  D.I. 1.  AP has alleged direct infringement of all four patents-in-suit and indirect infringement of the Mody patents.  *Id*. at ¶ 72.

AP did not develop the alleged inventions claimed in the patents-in-suit, nor did it prosecute the patents.  The '803 patent issued to Nokia Corporation in 2005, and the Mody patents issued to the Georgia Institute of Technology in 2007, 2009, and 2010.  *Id.* at ¶¶ 13-17. It was not until years later, in June 2018, that AP acquired the patents-in-suit (two months after it was formed), ostensibly for the purpose of asserting them against myriad companies and obtaining settlements.  *See* Hertko Decl., Exs. A-E.[1]  To date, AP has asserted the Mody patents

---

[1] Citations to the "Hertko Decl." refer to the supporting Declaration of Matthew J. Hertko and the exhibits attached thereto.

in 40 cases and the '803 patent in 24 cases since September 2018 in this district and the Western District of Texas.  *See id.*, Exs. W-X.

Each of Seiko Japan and Epson Philippines are foreign corporations organized under foreign laws.  Neither has any facilities in the United States, and neither is registered to do business in any state.  *See* Kobayashi Decl., ¶¶ 5-6.[2]  Seiko Japan is a Japanese corporation and is headquartered in Nagano, Japan, and Epson Philippines is a Philippine corporation and is headquartered in Lipa, Philippines.  *Id.* at ¶¶ 3-4.  AP conflates Seiko Japan and Epson Philippines together as "Epson" throughout its Complaint, and it also includes allegations regarding unidentified "affiliates" who are vaguely tied to the "corporate structure."  *See, e.g.*, D.I. 1, at ¶¶ 4-8.  Only one Epson entity—Epson America, Inc., a wholly-owned subsidiary of Seiko Japan based in Los Alamitos, California—has responsibility for sales of the accused Epson products in the U.S. market.  Arabian Decl., ¶¶ 11-12.[3]  For the reasons set forth below, AP's allegations fail to satisfy the *Twombly/Iqbal* pleading standards, and its Complaint should be dismissed in its entirety under Rule 12(b)(6).  In the alternative, to the extent the Court finds that AP has sufficiently stated a claim against Seiko Japan and Epson Philippines, this case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a).

## IV.   AP FAILS TO ADEQUATELY STATE A CLAIM FOR INFRINGEMENT AGAINST SEIKO JAPAN AND EPSON PHILIPPINES, AND ITS COMPLAINT SHOULD BE DISMISSED.

AP's Complaint does not allege any specific activities by Seiko Japan or Epson Philippines individually that give rise to direct infringement; instead the allegations refer only to

---

[2] Citations to the "Kobayashi Decl." refer to the supporting Declaration of Toshihiko Kobayashi.

[3] Citations to the "Arabian Decl." refer to the supporting Declaration of Siranush Arabian.

the nebulous "Epson."  This, however, is insufficient.  And as it pertains to indirect infringement, AP's Complaint does nothing more than recite conclusions that track the elements of induced and contributory infringement, without any specific facts particular to Seiko Japan or Epson Philippines, as evidenced by comparing the Complaint at issue here to those that AP filed against other defendants using ***verbatim allegations***—with only the party names changed.

### A.    Legal Standard

Rule 12(b)(6) warrants dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted."  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic, Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Accordingly, in the Fifth Circuit, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (5th Cir. 2007) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)); *see also Cantu v. Moody*, 933 F.3d 414, 420 (5th Cir. 2019) (affirming Rule 12(b)(6) dismissal in view of conclusory allegations).  And similarly, the Federal Circuit has explained that "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" are to be disregarded.  *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1128 (Fed. Cir. 2021) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 1997)).

### B.    AP Failed to Sufficiently Plead Direct Infringement as to the Patents-in-Suit

AP's allegations of direct infringement do not state a plausible claim for relief as to ***any defendant*** in particular.  And certainly, the Complaint does not state a plausible claim as to Seiko

Japan or Epson Philippines—foreign corporations—particularly with the Complaint's other references to Epson America.  Instead, the Complaint alleges direct infringement of each of the four patents-in-suit based solely on "Epson's" purported use of, and/or making, importing, providing, supplying, distributing, selling, and/or offering for sale, the accused products, and attempts to attribute the domestic acts and documents of Epson America to these foreign defendants.  *See, e.g.*, D.I. 1 at ¶¶ 20-21, 35-36, 48-49, 64-65.  "At most, [AP's] allegations amount to legal conclusions as to the defendants as a group—not to facts showing a plausible inference of liability as to [Seiko Japan or Epson Philippines.]"  *Celgene*, 17 F.4th at 1129.

AP's allegations of direct infringement are similar to those that the Federal Circuit held insufficient under Rule 12(b)(6) in *Celgene*.  There, in the context of a Hatch-Waxman litigation, the plaintiff included a claim for relief against three parties, including a foreign parent of the entity that signed and physically submitted an Abbreviated New Drug Application (ANDA).  *Id.* at 1128-29.  The complaint in question included infringement allegations against "'Mylan' (defined collectively to include all three defendants)."  *Id.* at 1128.  In affirming the district court's dismissal of the claims against the foreign parent, the Federal Circuit noted that "nothing in the complaint suggests *how* [the foreign parent] is involved in the ANDA process, *how* it bypassed the corporate form to make [its U.S. subsidiary] its alter ego, or the like."  *Id.* at 1129 (emphasis in original).  Similarly, here, AP simply makes conclusory allegations against the defendants as a group—it does not include allegations that each of Seiko Japan and Epson Philippines conducted any act in the United States or *how* each of Seiko Japan and Epson Philippines separately are allegedly responsible for infringement of the accused products.  As the Federal Circuit held in Celgene, "[t]hat just isn't enough."  *Id.*

Notably, the paragraphs in AP's Complaint alleging direct infringement include citations to the Epson website that purport to describe the accused products.  *See, e.g.*, D.I. 1 at ¶¶ 20-21, 35-36, 48-49, 64-65.  The URL addresses in these collective paragraphs that refer to "epson.com" are links to 3 different webpages and 2 different product specification sheets from the ***Epson America*** website.  Even a cursory review of the cited materials evidences that both the websites and the specification sheets clearly state "Epson America, Inc." and provide contact information for Epson America in California.  *See* Hertko Decl., Exs. F-J.  And that makes sense, given that Seiko Japan and Epson Philippines have no ties to the United States; only Epson America has responsibility for sales in the U.S. market, and Epson America operates and controls the epson.com website for the U.S.  *See* Kobayashi Decl., ¶¶ 3-6; Arabian Decl., ¶¶ 7, 11.  The remainder of AP's allegations regarding direct infringement constitute assertions based on the IEEE 802.11 standard that AP has repeated—verbatim—in various actions in which it has asserted the patents-in-suit against other, unrelated parties.  These allegations fall short of the *Iqbal/Twombly* pleading standard.  *Swirlate IP LLC v. Keep Truckin, Inc.*, No. 20-1283-CFC, 2021 WL 3187571, (D. Del. July 28, 2021).  In fact, if anything, the Complaint's allegations as a whole demonstrate that any claims against Seiko Japan and Epson Philippines are ***implausible***, and that AP instead should have brought this case against Epson America.

AP's failure to plead any specific facts relating to activities allegedly undertaken by Seiko Japan or Epson Philippines—particularly where the only factual evidence actually pled relates to activities of Epson America—is fatal to AP's claims of direct infringement, and these claims should be dismissed.

### C.      AP Failed to Sufficiently Plead Induced Infringement of the Mody Patents

AP's claims for induced infringement of the Mody patents are equally flawed,

conclusory, and implausible.[4]  Liability for inducement "requires a showing that the alleged

inducer [1] knew of the patent, [2] knowingly induced the infringing acts, and [3] possessed a

specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic

Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also DSU Med. Corp v. JMS Co.*, 471

F.3d 1293, 1306 (Fed. Cir. 2006).

### 1.      AP's Allegations Against Seiko Japan and Epson Philippines are the Same Allegations—Verbatim—that AP has Made Against Several Other Defendants

As an initial matter, AP's allegations of indirect infringement against Seiko Japan and

Epson Philippines mirror those—word for word—that AP has lodged against a number of other

defendants in various other cases asserting the Mody patents.  AP's inducement allegations are

purportedly set out at the end of the Complaint under the heading "Additional Allegations

Regarding Infringement."  *See* D.I. ¶¶ 30, 43, 59.  After setting forth a 17-page list of what

appears to be every Epson product that AP could identify as an allegedly "accused product"

(with no factual allegations whatsoever relating to any of the products), the Complaint provides

28 paragraphs which contain no factual allegations but instead provide nothing more than "rote

recitals" of the elements of induced and contributory infringement.  *Celgene*, 17 F.4th at 1128.

These exact same allegations are repeated—verbatim—over and over across multiple complaints

against different parties.  *Compare* D.I. 1 at ¶¶ 72-99 *with, e.g.,* Complaint at ¶¶ 60-87, *American

Patents LLC v. Polycom, Inc.*, No. 6:21-cv-742-ADA (W.D. Tex. Jul. 20, 2021), D.I. 1;

---

[4] AP is only alleging induced infringement of the Mody patents, and not of the '803
patent.  *See, e.g.*, D.I. 1 at ¶¶ 72, 75.

Complaint at ¶¶ 73-100, *American Patents LLC v. Xerox Corp.*, No. 6:21-cv-638-ADA (W.D.

Tex. Jun. 21, 2021), D.I. 1; *and* Complaint at ¶¶ 72-99, *American Patents LLC v. Newell Brands

Inc.*, No. 6:21-cv-636-ADA (W.D. Tex. Jun. 21, 2021), D.I. 1.  This alone demonstrates that they

are not specific factual assertions relating to any particular conduct by Seiko Japan or Epson

Philippines, but rather are simply "conclusory allegations [and] legal conclusions masquerading

as factual conclusions" that AP treats as a one-size-fits-all approach to pleading its claims for

alleged infringement against everyone.  *McZeal*, 501 F.3d at 1356.

### 2.  AP Has Not Alleged Facts Supporting a Plausible Claim that Seiko Japan or Epson Philippines Knew of the Mody Patents or Possessed the Requisite Specific Intent

Moreover, AP's assertions of indirect infringement are devoid of any factual allegations

whatsoever that either Seiko Japan or Epson Philippines was aware of the patents-in-suit prior to

the filing of this action, let alone that they knowingly induced infringing acts with specific intent.

Inducement requires that the alleged infringer knew of the patent, knowingly induced the

infringing acts by a direct infringer, and possessed a specific intent to encourage another's

infringement of the patent." *Vita-Mix Corp*, 581 F.3d at 1328.  Here, AP's allegations, again, fall

far short of the *Iqbal/Twombly* standard.

The only allegations in the Complaint relating to Seiko Japan or Epson Philippines's

knowledge of the patents-in-suit are based on the filing of the case.  D.I. 1, at ¶¶ 75, 85, 94, 95.

Accordingly, AP acknowledges that Seiko Japan and Epson Philippines only obtained actual

knowledge of the Mody patents when AP filed its Complaint.  AP also alleges no facts to support

a plausible claim that Seiko Japan or Epson Philippines specifically intended to infringe the

Mody patents—nor could they have, given their lack of knowledge of the patents.  The requisite

specific intent for induced infringement is more than just the intent to cause the acts that produce

direct infringement.  *DSU Med. Corp.*, 471 F.3d at 1306.  Rather, "inducement requires evidence

9

of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id*.  Here, the Complaint pleads no facts supporting even a remote claim—let alone a plausible one—that Seiko Japan and Epson Philippines possessed the specific intent required to induce infringement of the Mody Patents. And at the pleading stage, a complaint must contain sufficient factual allegations to permit an inference that the defendant had such knowledge.  *Babbage Holdings, LLC v. Activision Blizzard, Inc.,* Civ. No. 2:13-750-JRG, 2014 WL 2115616, at *2 (E.D. Tex. May 15, 2014).

### 3.      AP's Allegations of "Willful Blindness" are Equally Insufficient.

Similarly, and to the extent they can be understood, AP's allegations that Seiko Japan and Epson Philippines should be liable for inducement because of willful blindness—again, pure boilerplate—are likewise insufficient.  Facing a lack of any facts that suggest Seiko Japan or Epson Philippines knew of the Mody patents or had specific intent to infringe, AP suggests that Seiko Japan and Epson Philippines were willfully blind. D.I. 1, at ¶ 93.  The Complaint, however, puts forth no facts identifying how Seiko Japan or Epson Philippines were purportedly aware, should have known, or took steps to purposefully avoid discovery of the Mody Patents. Instead, AP speculates that Seiko Japan and Epson Philippines have a policy of not reviewing the patents of others.  This bald assertion is identical to the one that AP has made against several other defendants as part of the same exact litany of "allegations," and, once again, is simply a "conclusory allegatio[n] [and] legal conclusion[n] masquerading as [a] factual conclusion[n]." *McZeal*, 501 F.3d at 1356.  And in any event, even this pure conjecture is insufficient because prior decisions in this district have concluded that a "[company's] policy of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness.'"  *Nonend Inventions, N.V. v. Apple, Inc.*, Civ. No. 2:15-466-JRG-RSP, 2016 WL 1253740, at *2-3 (E.D. Tex. 2016).  AP's allegations of willful blindness are nothing more than "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 687.

### D.    AP Failed to Sufficiently Plead Contributory Infringement of the Mody Patents

AP's claims for contributory infringement of the Mody patents fare no better.[5]  "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)). For the reasons discussed above in the context of inducement, the Complaint fails to allege any factual assertions that would support a plausible claim that Seiko Japan or Epson Philippines had knowledge of the Mody patents.  And again, at the pleading stage, a complaint must contain sufficient factual allegations to permit an inference that the defendant had such knowledge. *Babbage Holdings,* 2014 WL 2115616 at *2.  The lack of any such factual allegations is fatal to AP's claim of contributory infringement.

### E.    AP Failed to Sufficiently Plead Willful Infringement of the Mody Patents

AP's claims of willful infringement should likewise be dismissed.[6]  Claims of willful infringement are "generally reserved for egregious cases of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016).  Therefore, at the pleading stage, a plaintiff must do more than offer a "formulaic recitation" of the elements of

---

[5] As is the case with induced infringement, AP is only alleging contributory infringement of the Mody patents, and not of the '803 patent. *See, e.g.*, D.I. 1 at ¶¶ 72, 88.

[6] AP's allegations of willful infringement, like its claims of induced and contributory infringement, are limited to only the Mody patents, and not the '803 patent. *See, e.g.*, D.I. 1 at ¶¶ 72, 98.

a willful infringement claim.  *See Varian Medical Systems, Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016).

Here, however, that is precisely what AP has provided—nothing more than a formulaic recitation of the elements of a willfulness claim.  The Complaint does not allege facts to support a claim for egregious culpable action or behavior; in fact, as explained above, it provides no factual evidence of any action taken by Seiko Japan or Epson Philippines at all.  AP's willful infringement claims are nothing more than plainly stated legal conclusions that Epson's conduct is "willful" and "at least objectively reckless."  D.I. 1, at ¶¶ 94, 98.  Specifically, AP simply alleges that "Epson's direct and indirect infringement…is, has been, and/or continues to be willful." Complaint ¶ 98.  This pure legal conclusion constitutes nothing more than the "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" which are to be disregarded when analyzing Rule 12(b)(6) motions.  *Celgene*, 17 F.4th at 1128. And without those conclusory statements, AP has nothing.

### F.      Conclusion

For the reasons set forth above, AP has failed to state a claim for infringement against Seiko Japan or Epson Philippines as to any of the four patents-in-suit.  Accordingly, the Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).

## V.      IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

In the event that the Court is not inclined to dismiss the Complaint, then it should transfer this case to the Central District of California.  The proper Epson entity to litigate this case—Epson America, Inc., the entity responsible for the importation, marketing, sales, and distribution of the accused products in the U.S.—is based there, and as such, that is where the bulk of the evidence relevant to this case is located.  The private factors favor transfer and the public factors

either favor transfer or are neutral.  There is no factor that favors the Eastern District of Texas over the Central District of California.

### A.     Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The district court should grant the transfer "[w]hen the movant demonstrates that the transferee venue is clearly more convenient." *In re Volkswagen of America Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

To determine whether a transferee venue is "clearly more convenient," district courts in the Fifth Circuit must evaluate a number of private and public interest factors.  *Id.*  The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*  The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law."  *Id.*  The plaintiff's choice of forum is not an independent factor in the transfer analysis under § 1404(a). *Id.* at 315 n. 10.

### B.     This Action Could Have Been Brought in the Central District of California

As a threshold matter, this action could have been brought in the Central District of California because personal jurisdiction and venue are proper there.  *See* 28 U.S.C. § 1404(a). Seiko Japan and Epson Philippines are foreign entities.  As such, subject to the jurisdictional predicates (which Seiko Japan and Epson Philippines do not contest for this specific case only),

they "may be sued in any judicial district." 28 U.S.C. § 1391(c)(3); *see also Adaptix Inc. v. HTC Corp.*, 937 F.Supp.2d 867, 872 (E.D. Tex. 2013).  And personal jurisdiction and venue are proper over Epson America—the party whom AP purposefully avoided naming as a defendant because venue is not proper over it in this District—in the Central District of California.

### C.    The Private Interest Factors Favor Transfer to California

The private interest factors strongly favor transfer to California or are neutral, while none favor the Eastern District of Texas.  The vast majority of the evidence relevant to the accused products—including employees that Epson America has specifically identified as having relevant information—resides in the Central District of California.  In addition, at least one known non-party witness—a prosecuting attorney of one of the patents-in-suit—resides in San Diego.  The other known non-party witnesses—the five inventors of the patents-in-suit and the various prosecuting attorneys—reside throughout the country (and, in the case of three of the inventors, in Finland)—but none reside in Texas (let alone in this District).  Indeed, given AP's recent acquisition of decades-old patents, Seiko Japan and Epson Philippines are not aware of any evidence in the Eastern District of Texas.  The Federal Circuit has held that a motion to transfer should be granted where, as here, "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff."  *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### 1.    Access to Evidence is Easier in the Central District of California

The evidence related to the accused products resides in California or in Japan—with no evidence in Texas.  Epson America is a California corporation with its principal place of business and headquarters in Los Alamitos, California.  *See* Arabian Decl., ¶ 4.  Because all U.S. sales of Epson products fall within the purview of Epson America, any discovery relating to the sales and marketing of the accused Epson products—which will undoubtedly be sought by AP in

14

this litigation—resides in California.  *Id.* at ¶¶ 5-9.  Indeed, Epson America's personnel responsible for marketing, sales, distribution, and technical service, as well as its documentation, are located in California.[7]  *Id.*

In particular, Epson America has identified five Epson America employees who live in California and work out of the Los Alamitos, CA office (which is located in the Central District of California) that have relevant knowledge regarding sales, marketing, revenues, and profits of the Accused Products:

- Sira Arabian, Director of Services and Support Operations;

- Scott Sturcke, Director of Creative Services, Online Marketing, & Video;

- Kathy Mester, Manager, Finance;

- Nils Madden, Senior Marketing Director, Consumer Imaging & Printing; and

- Mark Roslon, Director, Commercial Projectors

*Id.* at ¶ 8.  None of these witnesses live or work in the Eastern District of Texas, and neither do any of the Epson America employees who report to them.  *Id.* at ¶ 9.  And Epson America has no facilities or evidence located in Texas.  *Id.* at ¶¶ 5-10.

Moreover, Seiko Japan is a Japanese corporation headquartered in Nagano, Japan.  *See* Kobayashi Decl., at ¶ 3.  Epson Philippines is a Philippine company headquartered in Lipa, Philippines and is a wholly-owned subsidiary of Seiko Japan.  *Id.* at ¶ 4.  Seiko Japan is responsible for the design and manufacture of Epson products, while Epson Philippines, a wholly owned subsidiary of Seiko Japan, manufactures certain Epson products.  Thus, most, if not all, of

---

[7] The Federal Circuit has held that "[w]hile electronic storage makes documents more widely accessible, this factor remains relevant."  *In re Atlassian Corp. PLC,* No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 2021) (citing *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 316 (5th Cir. 2008) (*en banc*) and *In re Radmax, Ltd*., 720 F.3d 285, 288 (5th Cir. 2013) ("[T]he question is relative ease of access, not absolute ease of access.")."

Seiko Japan's and Epson Philippines's documents that are relevant to this action, including their design and technical documents relating to Epson products, are located in Nagano, Japan. *Id.* at ¶ 7. Neither Seiko Japan nor Epson Philippines has any facilities in the U.S., and neither is registered to do business in any state in the country (including Texas). *Id.* at ¶¶ 5-6.

On the other hand, Seiko Japan and Epson Philippines are not aware of ***any*** relevant evidence in the Eastern District of Texas. Any evidence relating to the accused products is in California (and Japan). And as it relates to AP, as noted above, the patents-in-suit are decades old, were originally developed and obtained by unrelated third parties not in Texas, and were only recently acquired by AP in 2018 long after they had issued.

For all of these reasons, this factor strongly favors transfer to California.

### 2.      The Availability of Compulsory Process is Neutral

At this early stage, Seiko Japan and Epson Philippines are not aware of any non-party witnesses within 100 miles of either the Eastern District of Texas or the Central District of California, so this factor is neutral.

### 3.      The Cost of Attendance for Willing Witnesses is Substantially Less in California

The convenience of witnesses—"probably the single most important factor in the transfer analysis"—strongly favors transfer to California. *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

***First,*** the Central District of California is far more convenient for Defendants' party witnesses. As explained above, Defendants expect that all or most of their relevant witnesses will be located in California (or Japan), and Epson America has identified five individuals in California who have relevant information. *See* Arabian Decl., ¶¶ 5-10; Kobayashi Decl., ¶ 7. There is also the possibility that certain witnesses relevant to this action will need to travel from

Asia.  *See supra* § V.C.1.  Travel from Asia to the Los Angeles area is much faster and more convenient than travel to Sherman, Texas.  For example, this Court is approximately 1,000 miles further from Tokyo than the courts of the Central District of California, and would add an additional 2.5 hours of travel time on all Defendant witnesses traveling from Japan.  *See* Hertko Decl., Exs. K-O (showing details of travel, including distance and flights from Tokyo to Los Angeles, CA; distance and flights from Tokyo to Dallas, TX; and driving directions from Dallas/Ft. Worth airport to Sherman, TX).[8]

*Second*, the Central District of California is more convenient for at least one non-party witness, and the other non-party witnesses of which Seiko Japan and Epson Philippines are aware are located across the country or in Finland.  There are two named inventors on the Mody patents, neither of whom resides in Texas: Apurva Mody, who resides in the Boston, Massachusetts area, and Gordon Stuber, who resides in Atlanta, Georgia.  *See id.* at Exs. P-Q.  The three named inventors of the '803 patent all reside in Finland.  *See id.* at Exs. R-T.  One of the prosecuting attorneys of the Mody patents (Paul Hunter) resides in San Diego.  *See id.* at Ex. U.  Other third-party attorneys involved in the prosecution of the Mody patents reside in Atlanta, Georgia; Charlotte, North Carolina; and Nashua, New Hampshire, while the third-party attorneys who prosecuted the '803 patent appear to reside in Stamford, Connecticut.  The Central District of California is clearly more convenient for Mr. Hunter; and as for the other witnesses throughout the U.S. and in Finland, the Central District of California is at least as convenient as

---

[8] The shortest commercial flight from Tokyo to Los Angeles is 9 hours and 50 minutes; the shortest commercial flight from Tokyo to Dallas is 11 hours and 30 minutes, and the drive from the Dallas/Ft. Worth airport to Sherman is at least 1 hour and 5 minutes.  *See* Hertko Decl., Exs. M-O.

this District, given the availability of direct flights into Los Angeles compared to the travel associated with flying to Dallas and then driving to Sherman.

For all of the above reasons, this factor also strongly favors transfer.

### 4.   Judicial Economy Favors Transfer

Judicial economy likewise favors transfer of this consolidated action to the Central District of California. *Adaptix*, 937 F.Supp.2d at 876 ("Generally, other practical problems focus on issues of judicial economy.").  The Central District of California is a vastly more convenient venue for most, if not all, party witnesses and at least one known nonparty witness.  While AP has filed other cases in this District asserting the Mody patents and the '803 patent, it does not appear that any *Markman* briefing has been submitted or any *Markman* hearing has been held in any of those cases.  In fact, the vast majority of them settled shortly after filing.  As such, because this Court has not yet invested substantial resources in this action or any substantive issues pertaining to the patents-in-suit,[9] there is no overriding judicial economy concern that would weigh against transfer.  *See Adaptix*, 937 F. Supp. 2d at 877; *see also Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964) (finding that Section 1404(a) "should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just").  Policy considerations also favor transfer because "[a]llowing a plaintiff to manufacture venue based on [the existence of separately filed cases] alone would undermine the principals underpinning transfer law and the

---

[9] Defendants, of course, recognize that the Court has devoted resources to resolving various Rule 12(b) motions filed by defendants in the various cases in response to AP's complaints.  Those motions appear to be procedural in nature (e.g., motions to dismiss) and not related to substantive aspects of the patents-in-suit relevant to Defendants here.

recently enacted America Invents Act."  *See GeoTag, Inc. v. Starbucks Corp.*, Civ. No. 2:10-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013).

   **D.     The Public Interest Factors Favor Transfer to California or Are Neutral**

   On balance, the public interest factors favor transfer to the Central District of California because of that district's greater local interest in this litigation.  The remaining public interest factors are neutral.

   **1.     The Substantial Local Interest of the Central District of California Favors Transfer**

   The Central District of California has a significant interest in this litigation, whereas any local interest of this district is minimal given AP's recent formation and acquisition of the patents-in-suit.  As detailed above, the Central District of California is home to Epson America, the Epson entity responsible for marketing and sales of the accused products in the United States—and, as such, the majority of party witnesses and relevant documents.  While AP did not sue Epson America here (because venue is not proper), Epson America is concurrently filing a declaratory judgment action in the Central District of California relating to the patents-in-suit.

   On the other hand, the only alleged connection between this district and AP's claims are (1) AP's domicile in Tyler, Texas and (2) the alleged "making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular."  D.I. 1, ¶¶ 1,5.  As to the former, AP was not formed until April 2018, shortly before it acquired the patents-in-suit in June 2018.  *See* Hertko Decl., Ex. A.  As such, AP's ties to this venue are weak and are entitled to little weight.  *In re: Juniper Networks*, 14 F.4th 1313, 1320-21 (Fed. Cir. 2021).  And as to the latter, as the allegation in the Complaint lays bare, every district in the country has the same interest.  Accordingly, such superficial, venue-motivated connections do not create a local interest.  *See In re TS Tech USA*

*Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *see also Promote Innovation LLC v. Bristol-Myers Squibb Co.,* Case No. 2:10-cv-120, 2011 WL 1399393, *3 (E.D. Tex. Apr. 13, 2011).

### 2.      Transfer Poses No Greater Administrative Difficulties Flowing From Court Congestion

Issues of court congestion are neutral in this transfer analysis.  According to Federal Judicial Caseload Statistics for the 12 months ending March 31, 2021, the median time to trial for civil actions in the Central District of California was about four-and-a-half months longer than in this district.  *See* Hertko Decl., Ex. V (19.8 months for this district, 24.3 months for the Central District of California).  However, even with such a minor difference in time to trial, "this factor appears to be the most speculative … and case-disposition statistics may not always tell the whole story."  *In re Genentech*, 566 F.3d at 1347.  Further, the Federal Circuit has held that an individual transferor court's ability to set a fast time to trial is not entitled to significant weight for this factor.  *In re Apple Inc.*, 969 F.3d 1332, 1344 (Fed. Cir. 2020).

### 3.      Both This Forum and the Central District of California Are Familiar With Patent Law

This factor is neutral because the Central District of California and this district are equally capable of applying patent law.  *Adaptix*, 937 F.Supp.2d at 878

### 4.      Transfer Would Not Pose Any Unnecessary Problems of Conflicts of Laws or in the Application of Foreign Law

As a patent infringement suit, transfer of this case to the Central District of California would not pose any apparent problems of conflicts of laws or in the application of foreign law, and thus this factor is neutral.  *See In re Radmax, Ltd*., 720 F.3d at 289-90.

\* \* \* \* \*

In summary, the following factors favor transfer: access to evidence (private factor 1); cost of attendance of willing witnesses (private factor 3); judicial economy (private factor 4); and

local interest (public factor 1).  The five remaining factors are all neutral, and no factor weighs against transfer.  In similar circumstances where multiple factors favor transfer, including some strongly favoring transfer, and any remaining factors are neutral, the Federal Circuit has held that transfer is appropriate.  *See, e.g.*, *In re Nintendo Co.*, 589 F.3d at 1198.  So too here.  Defendants therefore have satisfied their burden to show that the Central District of California is clearly more convenient, and transfer should be granted.

## VI.     CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety for failure to state a claim under Rule 12(b)(6) or, in the alternative, transferred to the Central District of California.

Dated: December 21, 2021

Respectfully submitted,

*/s/ Keith B. Davis*
Keith B. Davis
Texas State Bar No. 24037895
**JONES DAY**
2727 North Harwood Street
Suite 500
Dallas, Texas  75201-1515
(214) 220-3939 Phone
(214) 969-5100 Fax
kbdavis@jonesday.com

William E. Devitt
Matthew J. Hertko
**JONES DAY**
77 W. Wacker Drive
Suite 3500
Chicago, Illinois 60601
(312) 782-3939 Phone
(312) 782-8585 Fax
wdevitt@jonesday.com
mhertko@jonesday.com

*ATTORNEYS FOR DEFENDANTS SEIKO*
*EPSON CORPORATION AND EPSON*
*PRECISION PHILIPPINES, INC.*